Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 51 | **DATE** | 5/3/2001 |
| **CASE TITLE** | Nav-Aids, Ltd. vs. Nav-Aids USA, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Plaintiff's moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss USA's three counterclaims for failure to state a claim on which relief may be granted. Plaintiff's motion to dismiss counterclaim (11-1) is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 0 3 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/3/2001 date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NAV-AIDS LTD., )
)
        Plaintiff-Counterdefendant, )
)
v. ) No. 01 C 0051
)
NAV-AIDS USA, INC., )
)
        Defendant-Counterplaintiff. )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Plaintiff, NAV-AIDS LTD. ("LTD"), brought a complaint against defendant NAV-AIDS USA, INC. ("USA"), pursuant to 28 U.S.C. §§ 1331, 1332(a)(2) and 1338 and the Lanham Trademark Act, 15 U.S.C. § 1051, *et. seq.* In its answer, USA filed counterclaims for breach of contract, tortious interference with business and conversion. LTD moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss USA's three counterclaims for failure to state a claim on which relief may be granted. As explained below, we grant in part and deny in part the motion.

### BACKGROUND

LTD designs, manufactures and sells ground support equipment for many of the world's aircraft, including civil, commuter, corporate and military planes, helicopters and the Space Shuttle. Beginning at least as early as 1974, LTD adopted and first used in commerce in both Canada and the U.S., the trademarks NAV-AIDS and NAV-AIDS plus design in connection with its ground support equipment and ancillary goods and services. Since that time, LTD has continuously used the NAV-AIDS marks in connection with the marketing and promotion of its equipment and goods and services throughout the world.

For several years, USA was a distributor of LTD products pursuant to an oral distributorship agreement, whereby USA would receive orders from end-users for LTD equipment and purchase that equipment from LTD for resale directly to the end-users. USA offered to purchase LTD's equipment by submitting purchase orders to LTD. LTD accepted USA's offers by shipping the requested equipment in response to each purchase order it received. At the time the equipment was shipped, LTD transmitted invoices for each purchase order, which contained various terms and conditions governing the parties' relationship. While acting as a distributor of LTD's products, USA enjoyed a non-exclusive limited license to use the NAV-AIDS marks. Recently, LTD terminated the distributorship with USA and LTD alleges that with that termination, USA's non-exclusive limited license to use the marks terminated as well.

## ANALYSIS

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint, not decide the merits of the case. *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). In considering a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *MCM Partners, Inc.*, 62 F.3d at 972. We should not grant a motion to dismiss unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957).

USA's first counterclaim for breach of contract alleges that LTD breached the distributorship agreement by terminating it without cause.[1] LTD argues, however, that the oral distributorship was terminable at will as a matter of law. Under Illinois law, a contract with no

---

[1] As LTD points out in its motion to dismiss, Count I can be read to allege two different breach of contract claims. LTD does not seek to dismiss the claim alleging that it failed to fill orders received from USA prior to the termination of the distributorship. USA's counterclaim, ¶¶ 17-18. Therefore, we do not address and thus, will not dismiss the second breach of contract claim.

2

cognizable duration term is a contract terminable at will, by operation of law. *Walthal v. Rusk*, 172 F.3d 481, 485 (7th Cir.1999); *First Commodity Traders, Inc. v. Heinhold Commodities, Inc.*, 766 F.2d 1007, 1012 (7th Cir.1985).

USA contends, however, that "through a continuous pattern of business activity over 19 years, [it] acquired certain rights, among them that the business relation could be dissolved only by mutual agreement, o[r] unilaterally, if for cause, such as non-performance." USA's Amended Answer ¶ 14. USA alleges that LTD's unilateral termination was wrongful because it stated no cause, and therefore constitutes a breach of contract. We disagree. Because the oral contract did not specify a time limit, it was terminable at will. *First Commodity Traders*, 766 F.2d at 1012. We do not accept the argument that the purchase orders established a duration for the distributorship relationship existing between USA and LTD. Nor do we agree that a continuous pattern of business created an agreement that LTD could only terminate for cause, such as non-performance. These allegations are not enough to show the oral agreement included any durational terms, or that the parties agreed to termination only for cause. Therefore, USA's first breach of contract claim is dismissed.

II.

USA's next counterclaim is for tortious interference with business. Count II alleges that LTD "made direct contact with USA's customers to notify them that USA was no longer an authorized distributor of LTD's products, and to re-submit any unfulfilled orders directly to LTD." Counterclaim ¶21. It also alleges that LTD contacted some of USA's vendors and told them that USA was in trouble with its business operations, that a former principal of USA had legal problems and that LTD was in dispute with USA.

In order to state a claim for interference with business relations (also called interference with prospective economic advantage), a party must plead the following elements: (1) plaintiff must have a reasonable expectancy of a valid business relationship with a third party; (2)

3

defendant must know of the prospective business relationship; (3) defendant must intentionally interfere with the prospective business relationship such that the prospective business relationship never materializes; and (4) the interference must damage the plaintiff. *Lynch v. Ford Inc. v. Ford Motor Co., Inc.*, 957 F.Supp. 142, 146 (N.D.Ill.1997).

In regard to a claim for tortious interference with business relations, some courts have held that the party making the claim must specifically identify a third party with which it had a potential business relationship. *Lynch*, 957 F.Supp. at 146 (citing *Schuler v. Abbott Lab.*, 265 Ill.App.3d 991 (1993)) ("Plaintiff states a cause of action only if he alleges a business expectancy with a specific third party."). That, USA failed to do. However, there are Illinois cases holding that the plaintiff may point to an identifiable "class" of third parties with whom he had a business expectancy (and toward whom the defendant directed his interfering actions), rather than a single third party. *See, e.g., River Park, Inc. v. City of Highland Park*, 281 Ill.App.3d 154, 217 Ill.Dec. 410, 667 N.E.2d 499, 507 (1996) (holding that a plaintiff must "allege either an interference with specific third parties or an identifiable class of third persons"). It may be inferred that USA meant to allege that the class of third parties with whom it had a business expectancy was the same group of customers from which it had the 18 purchase orders.

That said, having failed to allege that LTD improperly interfered with USA's ability to enter into contracts or business relationships with third parties interested in purchasing its products, USA has not satisfied the minimal requirements of federal notice pleading. USA fails to allege that it had any "reasonable expectancy" of a valid business relationship with any of its customers as the distributorship agreement had been terminated, and it was therefore no longer authorized to continue selling LTD's products. Because USA was in an at-will relationship with LTD, it could not reasonably expect to always have a business relationship with any of its customers. Just as the contract between LTD and USA could be terminated at any time, so too would USA's expectancy

4

of continued relationships with its customers. Because USA fails to allege a "reasonable expectancy," its tortious interference with business claim is dismissed.

We do find, however, that in looking at the entire pleading as a whole (the allegations contained in all three counterclaims), USA has stated a claim for tortious interference with contract. In Illinois, a plaintiff can recover for interference with existing contractual rights by proving "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *Int'l Marketing, Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 731 (7th Cir.1999) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145(Ill.1989)).

In paragraph 17 of its counterclaim, USA alleges that it received 18 separate orders from its customers between September 27 and October 13, 2000. USA issued purchase orders to LTD for the items and forwarded to LTD copies of the orders. Later, in paragraph 27, USA alleges that for at least 10 of these 18 orders, LTD "knowingly and consciously shipped product directly to [USA's] customer, invoiced said customers at a lesser figure than [USA] had quoted, and retained payments tendered from said customers, although [LTD] knew that said payments rightfully belonged to [USA]." Drawing all reasonable inferences in the plaintiff's favor as we must on a motion to dismiss, *see MCM Partners, Inc.*, 62 F.3d at 972, we conclude that USA has sufficiently stated a cause of action for tortious interference with contract. USA had contracts with these third party customers, and LTD was allegedly aware of these contracts. USA alleges that LTD induced the breach of these contracts by allegedly cutting out USA and taking the money from the customers. USA sufficiently alleges these contracts were breached and that it was damaged by alleging that LTD received the benefit of the contracts between USA and its customers.

There are numerous privileges that serve as a complete defense to tortious interference with contract. *Herman v. Prudence Mut. Cas. Co.*, 41 Ill.2d 468, 244 N.E.2d 809, 812 (Ill.1969). One such defense is dispositive: competition. *See e.g., Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir.1999) ("[C]ompetition, which though painful, fierce, frequently ruthless, sometimes Darwinian in its pitilessness, is the cornerstone of our highly successful economic system. Competition is not a tort ...."). In Illinois, a competitor is ineligible for the competition defense only if its conduct is motivated solely by spite or ill will. *Int'l Marketing*, 192 F.3d at 731 (citing *Strosberg v. Brauvin Realty Servs., Inc.*, 295 Ill.App.3d 17, 691 N.E.2d 834, 846 n.2 (Ill.App.Ct.1998)). Although normally, in federal court, the existence of this kind of privilege will be an affirmative defense for the defendants to raise, in some cases a complaint so clearly reveals the existence of the defense that judgment on the pleadings is possible. *Int'l Marketing*, 192 F.3d at 731. LTD's competitive motive--a privilege providing a complete defense--does not appear on the face of the complaint. Therefore, USA has stated a claim for tortious interference with contract, and that counterclaim will not be dismissed.

### III.

USA's final claim is that LTD's actions constitute conversion of USA's personal property. Under Illinois law, "'[t]he essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held.'" *In re Thebus*, 108 Ill.2d 255, 91 Ill.Dec. 623, 628, 483 N.E.2d 1258, 1260 (1985) (quoting *Bender v. Consolidated Mink Ranch, Inc.*, 110 Ill.App.3d 207, 65 Ill.Dec. 801, 806, 441 N.E.2d 1315, 1320 (1982)). To establish a cause of action for conversion under Illinois law a plaintiff must show "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the property of another; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property; and (4) a demand by plaintiff of possession thereof." *Eggert v. Weisz*, 839 F.2d 1261, 1263 (7th Cir.1988). Illinois law limits the circumstances in which a plaintiff may maintain an action for the

conversion of money. Money may be the subject of conversion, but it must be capable of being described as a specific chattel. *Eggert*, 839 F.2d at 1264. It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use. *Id.*, citing *In re Thebus*, 108 Ill.2d 255, 260, 91 Ill.Dec. 623, 625, 483 N.E.2d 1258, 1260-61 (1985). An action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money. *In re Thebus*, 108 Ill.2d at 260.

USA alleges that LTD knowingly and consciously shipped products directly to USA's customers, invoiced these customers at lesser figures than USA had quoted and retained payments tendered from these customers, although LTD allegedly knew that these payments belonged to USA. Furthermore, USA alleges that LTD on at least one occasion contacted a USA customer who had received products from USA and directed the customer to send payment directly to LTD, although LTD allegedly knew that payment belonged to USA. These allegations are insufficient to allege conversion of USA's funds. USA cannot show that at all times the money claimed belonged to USA and that LTD converted it to its own use. The money USA seeks to recover was money that belonged to its customers until they were to pay USA for its services -- a debt owed to USA. Thus, USA has no action for conversion because all it can show is an obligation to pay money.

## CONCLUSION

For the foregoing reasons, we dismiss USA's first counterclaim for breach of contract, the counterclaim for tortious interference with business and the counterclaim for conversion. We do not address the second counterclaim for breach of contract. We deny the motion to dismiss as to the counterclaim for tortious interference with contract. It is so ordered.

Marvin E. Aspen, District Court Judge

Dated:_____

7