Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 01 C 51 | **DATE** | 11/26/2002 |
| **CASE TITLE** | Nav-Aids Ltd vs. Nav-Aids Usa Inc | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 27 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 125 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| | | 02 NOV 26 AM 10:59 | date mailed notice | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



NAV-AIDS LTD.,
a Quebec corporation,

    Plaintiff,

v.

NAV-AIDS USA, INC.,
an Illinois corporation,

    Defendant.

No. 01 C 0051

Chief Judge Aspen
Mag. Judge Mason

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

This is the third time that plaintiff, Nav-Aids, Ltd. ("LTD.") has moved for an order of contempt against defendant Nav-Aids USA, Inc. ("USA") for allegedly violating an injunction that it not use LTD's identical parts numbers when selling its ground support equipment and parts for aircraft. The twist now is that USA no longer exists in its previous form; it sold all of its assets to a company called Cobra Systems, Inc. ("Cobra") and Cobra has now begun selling the same sort of aircraft equipment as USA did previously. LTD argues that Cobra is indistinguishable from USA, and thus, we should hold Cobra liable for the judgments we formerly issued against USA, and further, assess additional penalties against Cobra for continuing the same breaches of the injunction. For the following reasons, we Deny LTD's motion.

Facts

The facts of this case are not significantly in dispute. It is important to understand what transpired between the parties both before and after the creation of Cobra, so we will set forth some of the case's early procedural background as well.

A.  LTD. v. USA

LTD and USA both manufactured and sold ground equipment for aircraft to private customers and the United States government. In October, 2001, the District Court issued a preliminary injunction against USA to prevent it from using LTD's identical parts numbers when designating its parts to customers or misrepresenting in any way that its products were authorized or approved by LTD.[1] Soon thereafter, LTD brought a Motion for a Rule to Show Cause why USA should not be held in contempt for violating the injunction. While that motion was pending, the parties entered into a settlement agreement that held, *inter alia*, the preliminary injunction would become permanent.

In January, 2002, LTD filed a second Motion for a Rule to Show Cause, alleging that USA was continuing to violate the injunction by offering for sale military parts using LTD's identical parts number. We found USA in contempt of the permanent injunction and ordered it to disgorge to LTD any monies it had earned as a result of selling products with identical LTD parts numbers. The parties were to begin discovery of USA's assets, but such discovery never occurred because USA filed a voluntary petition for Chapter 11 bankruptcy in June, 2002. LTD then filed a separate adversary proceeding against USA, contesting the bankruptcy petition on the ground that it was merely a ploy by USA to avoid its obligations under the injunction or our court order. In August, 2002, USA voluntarily dismissed the bankruptcy proceeding.

---

[1] One of the specific issues was USA's use of LTD's identical parts numbers to sell parts and equipment to the U.S. government. Both USA and LTD were approved providers of products to the government and as such, had official profiles on the websites that Department of Defense ("DOD") and other contractors used to search for parts to purchase. When USA used LTD's identical parts number, any web search for an LTD part by number brought up both USA's and LTD's profile.

B.  The Creation of Cobra

The following facts about the creation of Cobra, its purchase of USA's assets, and its activities in getting the business up and running are not in dispute, although the parties do disagree about whether Cobra's actions with respect to how it did or did not differentiate itself from USA were intentional or accidental. Cobra and its sister corporation, Aircraft Product Supply, Inc. ("Aircraft") are entirely owned by Mark and Jeanette Wohlford, who are also both companies' sole directors, officers and shareholders. Aircraft is a broker of aircraft parts and supplies to various companies in the airline industry. One of its customers was USA.

In 2001, USA fell behind in paying its invoices to Aircraft; Aircraft subsequently required USA to execute a security agreement before it would agree to continue selling USA parts. Aircraft thereafter perfected its security agreement and eventually purchased the security interest of USA's only other secured creditor, Fifth Third Bank. Thus, at the time USA dismissed its bankruptcy petition, Aircraft was USA's only secured creditor. Soon thereafter, Aircraft initiated a public sale of all USA's assets pursuant to Uniform Commercial Code ("UCC") section 9-610. Aircraft informed LTD about the sale and offered to sell USA's assets to it. LTD declined to either purchase any of USA's assets or attend the sale.

Aircraft publicized the sale and entertained inquiries from potential buyers, but in the end Aircraft itself was the only bidder for USA's assets. Aircraft purchased the assets with the intent of manufacturing products similar to those made by USA, with the hope that the Wohlfords could create a parts and supplies manufacturing business. They incorporated Cobra in order to keep their new manufacturing company separate from Aircraft's parts

3

brokering business.

Cobra initially located its facilities at USA's previous location, and retained its phone number and fax number.[2] It has also hired at least two USA employees, David Dohm, Director of National Sales and Stacey Bisallion, General Manager; neither Dohm nor Bisallion were officers, directors or shareholders of USA. Cobra recently relocated its manufacturing facility to a new location.

In order for Cobra to conduct business with the DOD, it needed to register with the Central Contractor Registration ("CCR"), which is a sub-tier organization within the DOD's Defense Logistics Agency "(DLA"). Prior to registering with the CCR, each private supplier must obtain a Data Universal Numbering System ("DUNS") number from Dun & Bradstreet and also obtain a so-called CAGE code. Cobra could not hope to supply military products to the government without these two numbers.

Whether intentionally (as LTD alleges), or through secretarial mistake (as Cobra contends), both parties agree that at least initially, Cobra adopted USA's DUNS number and CAGE code for itself. Thus, any government entity searching for a product using USA's DUNS number would come to Cobra's profile, which also referenced USA in places. In its initial brief, LTD also alleges that Cobra also failed to change the product numbering system on its profile to one that was not identical to LTD's, *i.e.* Cobra was engaging in the same behavior which had led USA to be enjoined and sanctioned.[3]

---

[2] LTD contends, and Cobra has not disputed, that to this day, Cobra continues to use USA's old phone and fax numbers.

[3] As we explain below, Cobra neither admits nor denies using LTD's identical parts numbers on its profile. LTD does not address this contention again in its reply brief, so we are uncertain whether Cobra is still using LTD's parts numbering system on its military profile.

4

Next, both parties agree that, in an August, 2002 letter to the General Accounting Office ("GAO"), Cobra attorney James Rome (who formerly represented USA) protested the government's behavior with respect to certain government contracts previously awarded USA, and identified Cobra as a successor in interest to USA, asking the GAO to designate Cobra as an approved vendor for the USA contracts. LTD alleges that the contracts at issue are for products identified with its identical parts numbers. Cobra does not deny the letter, but merely says that Rome described Cobra as USA's successor in interest without its consent or approval.[4]

After LTD filed its initial brief, Rome sent several other letters to the DOD protesting its continued failure to consider Cobra for the government contracts described above. Rome attributes certain actions by the government as being taken against Cobra (such as barring it from its list of approved contractors), even though the issues of which he complains actually were taken against USA, well before Cobra's creation.[5] Although neither party says so specifically, we surmise from Rome's letters that the DOD was treating Cobra as a continuation of USA, at least with regard to the products Cobra supplied and the work it wanted to perform for the government. It is unclear whether the government ever did accept Cobra's request to supply to the DOD the parts and equipment

---

[4] LTD argues that Rome's letter and Cobra's secretary's actions could not have really been as "innocent" as Cobra claims, because if they were, Cobra would have attached affidavits from the individuals to their response brief explaining the mistakes, and would have immediately contacted the GAO to rectify any misunderstanding. However, LTD's contention of what Cobra "should" have done to demonstrate its innocence does not impact our analysis.

[5] Although LTD characterizes this second Rome letter as "ascribing various prior conduct of USA to Cobra even though that conduct occurred well before Cobra's ... incorporation," we cannot tell whether it was Cobra or the DOD that first treated Cobra as USA's predecessor. A third Rome letter explains that included in Cobra's purchase of USA's assets were rights to certain government contracts as well as contingent interests in offers submitted for solicitations. It also explains that it asked the government to effect a name and parts number change with respect to the solicitation, but that the government failed to do so.

5

originally ordered from USA and whether such order included parts with numbers identical to LTD's.[6]

**Legal Analysis**

A. <u>Service on Cobra</u>

Cobra first argues that USA has not properly served it with a copy of the motion for a Rule to Show Cause, and thus, Cobra should be dismissed from the proceedings. LTD does not respond to Cobra's service argument in its reply brief. Specifically, Local Rule 37.1 holds that service of a motion for a show cause order must be made personally on the alleged contemnor (or its attorney, if one has appeared), pursuant to the requirements of Fed.R.Civ.P. 4, which governs service of summons on defendants. Rule 4 does provide for a waiver of formal service in the interest of saving costs, but Cobra has specifically not waived its right to proper service. However, Rule 4 also provides that a party has 120 days to formally serve a defendant that objects to waiver of service. LTD filed this motion on September 20, 2002, and thus is still within the 120 day period and is able to cure the service deficiency if it wishes.[7]

B. <u>Cobra as Successor to USA</u>

Even assuming that Cobra was properly served, we find that legally, Cobra is not USA's successor in interest such that any injunction against USA also binds Cobra. A non-party is liable for contempt of an injunction "if, with notice of the injunction, [it] aids or

---

[6] It is important to understand that the injunction did not bar USA from supplying particular parts to the government, only from using LTD's identical parts numbers to identify such parts. Thus, to the extent that Cobra may wish to fulfill USA's contracts for the same products but with new parts numbers, they would not run afoul of the injunction.

[7] The question of proper service may be a moot point, however, since we deny LTD's motion on other grounds.

6

abets the enjoined party in the violation of the injunction or [is] a successor in interest to the property subject to litigation." *See Hexacomb Corp. v. GTW Enterprises*, No. 93 C 3107, 1994 WL 171533 (N.D.Ill., May 2, 1994) (internal citations omitted). Generally, a corporation that purchases the assets of another corporation is not liable for the transferor's debts or liabilities. *See Vernon v. Schuster*, 688 N.E.2d 1172, 1175 (Ill. 1997). This rule was established to protect "bonafide purchasers from unassumed liability." *Id.*, citing *Tucker v. Paxon Machine Co.*, 645 F.2d 620, 623 (8th Cir. 1981).

There are four exceptions to the general rule, however. A purchaser of a corporation's assets will be liable for prior debts (*i.e.*, will be found a successor in interest) in the following situations: 1) where there is an express or implied agreement of assumption; 2) where the transaction amounts to a consolidation or merger of the purchaser and seller corporations; 3) where the purchaser is a mere continuation of the seller; and 4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Steel Co. v. Morgan Marshall Industries, Inc.*, 662 N.E.2d 595 (Ill. 1996) (internal citations omitted). In this case, the third exception is at issue; LTD contends that Cobra is a "mere continuation" of USA and thus should be liable for its previous obligations to LTD and subject to the permanent injunction.

Under the "mere continuation" theory of successor liability, courts generally look to see if the purchasing corporation "maintains the same or similar management and ownership, but merely 'wears different clothes'" than the seller. *Vernon*, 688 N.E.2d at 1176 citing *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985). Thus, most courts consider whether there is a common identity of officers, directors and shareholders, that is, a continuation of the corporate entity of the seller, not simply a

7

continuation of the seller's business enterprise. *Id.*

LTD points out that several recent cases in the Seventh Circuit have found the mere continuation theory to be applicable even when there was not a unity of officers, directors and shareholders. Further, LTD contends that Cobra's various dealings with the DOD demonstrate that it fully intended to step into USA's shoes as a successor in interest, and thus, should be held liable for USA's obligations. We will address each argument separately.

First, the cases LTD cites in support of its argument that a court may find successor liability even in the absence of common officers and directors all have facts that are much more compelling in favor of finding liability than those here. In both *Hexacomb, supra,* and *Lincoln Nat'l Life Ins. Co. v. Nicklau, Inc.,* No. 98 C 2453, 2000 WL 656683 (N.D.Ill., May 17, 2000), the individuals on both sides of the questioned transactions were closely related, and the actual "sale" or transfer of property was plainly effectuated to avoid some prior court order. For example, in *Hexacomb,* the defendant company was subject to an injunction preventing it from building a certain type of machine for one of its customers. The owner of defendant arranged for five of his employees (including his son) to be hired by the customer for the specific purpose of building the machine that defendant had been enjoined from building itself. The court found that not only were defendant and its owner in contempt, but the customer was in contempt as well, since it aided in the violation of the injunction.

In *Lincoln Nat'l,* related family members attempted to avoid an outstanding state-court judgment against them when they opened up a successor restaurant to several previous restaurants they had owned (which restaurants were the subject of the state court

8

judgment). The wife of one of the officer/directors of the original restaurants – who herself was not a previous officer or director – became the sole director and shareholder of the new enterprise. However, the restaurants otherwise were nearly identical except for location. The new restaurant made great attempts to capitalize on the goodwill and name of the previous restaurants, served similar food, and employed almost all of the same individuals, including the two brothers who had been the officers, directors and shareholders of the first enterprises.

In this case, the evidence shows that Cobra is not a mere continuation of USA. The purchasers of USA's assets, the Wohlfords, had no prior connection to USA other than owning a company that did business with USA. In fact, their company, Aircraft, was a creditor of USA. It is true that Cobra was established to manufacture and sell similar or even identical products to those made by USA, but this activity merely shows that Cobra plans to continue USA's business enterprise. And unlike the situations in *Hexacomb* and *Lincoln Nat'l*, there is no evidence that Cobra purchased USA's assets to assist USA or its officers, directors and shareholders in evading the court order of contempt against that company.[8]

Further, Cobra's actions with respect to the DOD, even if intentional, actually demonstrate its attempts to distance itself from any wrongful USA behavior, while still trying to receive the full benefit of its business bargain, namely, its agreement to purchase USA's rights to certain government contracts. The Rome letters argue that Cobra should not be

---

[8] Cobra's employ of two former USA employees does not strengthen LTD's argument that Cobra is a mere continuation of USA. There is no evidence that these two employees were hired because of their ability to help infringe upon LTD's injunction, such as in *Hexacomb*, as opposed to being hired to help Cobra start up its business enterprise.

9

held liable for any possible USA debarment and simply request that Cobra be considered an approved vendor of USA's products. Cobra's appropriation of USA's DUNS number and CAGE code was short-lived; Cobra now has its own numbers that presumably do not direct a user to any USA information. And LTD has provided no evidence that Cobra has persisted in using those parts numbers that USA was enjoined from employing.[9] Instead, Cobra has been moving away from certain associations with USA; it has moved to a new location and changed all its logos.

We are not unsympathetic to LTD's plight; it is not unreasonable for it to want to have its judgment against USA satisfied. However, we do not find that Cobra's purchase of USA's assets in an arms length transaction between two unrelated entities makes Cobra a successor in interest to USA's liability to LTD or subject to the terms of the injunction. Thus, we deny LTD's motion for an order of contempt.[10] It is so ordered.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: November 26, 2002

---

[9] Of course, if LTD obtains information that Cobra is also using LTD's identical parts numbers, it may seek appropriate relief against Cobra itself.

[10] To the extent that both sides ask that we award attorneys' fees and costs, we deny their requests; we find that both parties were justified in their filings and thus an award of fees is not justified.

10